## FOURTH DEPARTMENT, JULY, 1962

## (July 2, 1962)

■ JOHN ST. CROIX, by ROBERT E. WHITE, His Guardian ad Litem, Respondent, v. ANNA ST. CROIX, Appellant.

APPEAL from a judgment of the Supreme Court in favor of plaintiff entered May 23, 1961, in Cayuga County, upon a verdict rendered at a Trial Term. Appeal from an order of the Supreme Court at Special Term entered May 17, 1961, which denied a motion by defendant for an order dismissing the complaint and directing that judgment be entered in favor of defendant.

Memorandum by the Court.   The trial court erroneously determined as a matter of law that plaintiff, who is the 15-year-old infant son of the defendant, was an emancipated child and as such could maintain this action for damages resulting from defendant's negligence.   " An unemancipated minor child has no right of action against his parent for non-willful injuries ".   (*Badigian* v. *Badigian,* 9 N Y 2d 472, 473.)   Plaintiff was injured on August 21, 1958 when an automobile in which he was a passenger was so operated by defendant that it left the highway and collided with a utility pole.   Some three years before the accident the Cayuga County Children's Court ordered that plaintiff's custody be removed from his parents and discharged to the Commissioner of Public Welfare of the City of Auburn.   Thereafter he resided sometimes in the home of his parents and at other times in a foster home until June, 1958.   It appears from the fact that the social worker permitted the child to return to his home on a trial basis at the specific request of the child that the Commissioner must have determined that home surroundings had substantially improved and put plaintiff back into the home on a trial basis.   Plaintiff continued to reside there until the time of the accident.   He was supported by defendant and was subject to her guidance, control and discipline.   During the period that the child was returned to his home for purposes of reconstruction and re-establishment of the former relations, it cannot be said as a matter of law that the mother had no parental control over the child.   At best, it seems that this presents a question of fact which should have been submitted to the jury.   (*Cannon* v. *Cannon,* 287 N. Y. 425; *Crosby* v. *Crosby,* 230 App. Div. 651; *Murphy* v. *Murphy,* 206 Misc. 228.)

GOLDMAN, J. (dissenting).   The infant plaintiff, 15 years of age, through his guardian secured a judgment against his mother, the defendant-appellant for injuries incurred while he was a passenger in his mother's automobile.   It is conceded that the negligence of the mother was not wanton or willful and, in our judgment, the jury properly found that the defendant was guilty of ordinary negligence.   The sole question presented by this appeal upon which we differ from the majority is whether, under the circumstances presented here, the family immunity doctrine bars the infant plaintiff from recovery against his mother.

This case presents a question of original impression in this State and differs from the situation in the recent leading case of *Badigian* v. *Badigian* (9 N Y 2d 472).   The essential difference grows out of this set of facts.   More than three years prior to the accident a proceeding was brought by the Commissioner of Public Welfare of the City of Auburn to secure custody of the three children of the defendant and her then husband.   The petition of the father, leading to the finding of neglect and the decree transferring legal custody from the parents to the Commissioner, alleged physical abuse of the children, excessive drinking, continuous bickering, obscene language in the home, all of which affected the physical condition and the school attendance of the children.   In June of 1957 the infant plaintiff was removed by the Commissioner from his parents' home and placed in a foster home.   At the conclusion of the school year in June of 1958 he was permitted by the Commissioner to return temporarily to his parents' home where he remained until the date of the accident on August 21, 1958.   On the night of the accident the parents had been drinking and had quarreled bitterly.   The accident resulted from a chase by the defendant in her automobile when she was following her husband's car after his declared intention to visit another woman.   The infant plaintiff was hospitalized by the accident and did not return to the parents' home subsequent to the accident but was again placed in a foster home by the Commissioner of Public Welfare.

The majority decision is based upon the position that the principal issue is one of emancipation which was a question of fact which should have been left to the jury for its determination. This dissent is bottomed squarely upon the proposition that the family unity was effectively destroyed by the Children's Court order transferring legal custody from the parents to the Commissioner. This order was in full force and effect at the time of the accident and, from the record before us, is still in effect. Therefore, as a matter of law there was no family unit in existence which would prevent the suit by the infant to secure redress for his mother's negligence.

All of us are agreed that every possible effort should be made to preserve the integrity of the family unit. The family immunity doctrine was upheld by the Court of Appeals in *Badigian* v. *Badigian* (*supra*) which, while recognizing that the immunity from suits by children against their parents had been removed in various substantive fields, held that the immunity doctrine could not be changed by the court in the tort field because the change "is beyond the competence of a court and belongs with the Legislature" (9 N Y 2d 472, 474). The court was agreed that a wrong was committed by a parent who negligently injured his child but that the remedy was barred "for reasons of fundamental public policy". We submit these "reasons" are absent in the case at bar.

As stated above, the main reason for not permitting personal injury actions between parent and child is the impairment of the parent-child relationship which is rooted in reciprocal rights and duties involving custody, control, rearing and discipline. So long as the Children's Court order was effective, as here, this parent-child relationship, in the sense of family unity, was gone and no further reason remained for reaching out for a doctrine or concept which would protect that which did not exist. Certainly this home was in no danger of having its tranquillity disrupted. This had occurred and was confirmed by the Children's Court order. To apply the rule under these circumstances would be an attempt to support a principle after the reason for its application had ceased to exist. *Cessante ratione legis, cessat et ipsa lex.*

Concur — Williams, P. J., McClusky and Henry, JJ.; Goldman and Halpern, JJ. dissent in an opinion by Goldman, J.

Judgment reversed on the law and facts and a new trial granted, without costs of this appeal to either party.